**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK by LETITIA JAMES, Attorney General of the State of New York,<br><br>　　　　　Plaintiff,<br><br>　　-against-<br><br>UNITED PARCEL SERVICE, INC.,<br><br>　　　　　Defendant. | Case No.: 1:26-cv-00341-VSB |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION TO DISMISS

Manisha M. Sheth
Adam M. Abensohn
Wing F. (Alex) Ng
David E. Chardack
QUINN EMANUEL URQUHART
　 & SULLIVAN, LLP
295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
manishasheth@quinnemanuel.com
adamabensohn@quinnemanuel.com
alexng@quinnemanuel.com
davidchardack@quinnemanuel.com

*Attorneys for Defendant United
　Parcel Service, Inc.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ALLEGATIONS OF THE FAC ..................................................................................................2

JURISDICTION ..........................................................................................................................4

ARGUMENT................................................................................................................................5

I.      LMRA SECTION 301 REQUIRES DISMISSAL OF ALL CLAIMS. ............................5

           A.      The CBAs Govern All Seasonal Workers. ...............................................................7

           B.      The FAC Is Entirely Preempted By LMRA Section 301 .........................................7

                      1.      Every Count Substantially Depends On And Is Inextricably Intertwined With The CBAs. ..........................................................7

                      2.      Counts Two And Five Seek to Enforce Rights Created by the CBAs. ........................................................................................19

                      3.      Plaintiff's Claims Challenge The Legality Of CBA Provisions. ...............21

           C.      All Preempted Counts Must Be Dismissed.............................................................24

II.     COUNT FIVE SHOULD BE DISMISSED AS TO DRIVER HELPERS BECAUSE THEY ARE EXEMPT FROM FLSA OVERTIME UNDER THE MOTOR CARRIER ACT.............................................................................................26

CONCLUSION............................................................................................................................28

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ............................................................................6, 14, 21, 24, 25

*Aquino v. Uber Technologies, Inc.*,
  671 F. Supp. 3d 338 (S.D.N.Y. 2023) ...................................................................9

*Austin v. Ken's Foods, Inc.*,
  772 F. Supp. 3d 163 (D. Mass. 2025) .............................................................18, 19

*Baldia v. RN Express Staffing Registry, LLC*,
  633 F. Supp. 3d 693 (S.D.N.Y. 2022) ...................................................................9

*Bilyou v. Dutchess Beer Distributors*,
  300 F.3d 217 (2d Cir. 2002) ................................................................................28

*Brown v. Illinois Bell Tel. Co.*,
  2016 WL 212939 (N.D. Ill. Jan. 19, 2016) ..........................................................22

*Carter v. Tyson Foods Inc.*,
  2009 WL 4790761 (N.D. Ind. Dec. 3, 2009) ...................................................10, 11

*Cavallaro v. UMass Mem. Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012) .....................................................................................5

*Clee v. MVM, Inc.*,
  91 F. Supp. 3d 54 (D. Mass. 2015) .......................................................................10

*Connecticut v. YP Advert. & Publ'g LLC*,
  2017 WL 810279 (D. Conn. Mar. 1, 2017) .............................................................6

*Curry v. Kraft Foods Global, Inc.*,
  2012 WL 104627 (N.D. Ill. Jan. 12, 2012) ...........................................................10

*Daily News of Los Angeles v. N.L.R.B.*,
  73 F.3d 406 (D.C. Cir. 1996) ...............................................................................24

*Diaz v. New York Paving Inc.*,
  2025 WL 1220924 (S.D.N.Y. Apr. 24, 2025) ...........................................11, 12, 16, 23

*Drake v. Hyundai Rotem USA, Corp.*,
  2013 WL 4551228 (E.D. Pa. Aug. 28, 2013) ........................................................16

*Eka v. Brookdale Hosp. Med. Ctr.*,
   2016 WL 11263669 (E.D.N.Y. Sept. 2, 2016) ......................................................................5

*Finkel v. Structure Tone, LLC*,
   782 F. Supp. 3d 130 (S.D.N.Y. 2025).................................................................4, 6, 7, 8

*Firestone v. S. Cal. Gas Co.*,
   281 F.3d 801 (9th Cir. 2002) ............................................................................................18

*First Nat. Maint. Corp. v. N.L.R.B.*,
   452 U.S. 666 (1981)...........................................................................................................24

*Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*,
   865 F. Supp. 2d 257 (E.D.N.Y. 2012) .........................................................................27, 28

*Gorman v. Consolidated Edison Corp.*,
   488 F.3d 586 (2d Cir. 2007).............................................................................................13

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)............................................................................................................5

*Hedges v. United Parcel Service of America, Inc.*,
   2020 WL 4481657 (E.D.N.Y. Aug. 4, 2020).....................................................................8

*Hoops v. Keyspan Energy*,
   794 F. Supp. 2d 371 (E.D.N.Y. 2011) .........................................................................17, 18

*Integrity Staffing Solutions v. Busk*,
   574 U.S. 27 (2014).........................................................................................................9, 13

*Johnson v. D.M. Rothman Co.*,
   861 F. Supp. 2d 326 (S.D.N.Y. 2012)...............................................................................17

*Kasiotis v. AWP, Inc.*,
   No. 5:19CV648, 2022 WL 4366972 (N.D. Ohio Sept. 16, 2022) .........................................13

*Levinson v. Spector Motor Serv.*,
   330 U.S. 649 (1947)...........................................................................................................28

*Levy v. Verizon Info. Servs., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007) .........................................................................8, 21

*Lingle v. Norge Div. of Magic Chef, Inc.*,
   486 U.S. 399 (1988)........................................................................................................5, 24

*Livadas v. Bradshaw*,
   512 U.S. 107 (1994).........................................................................................................6, 8

*Lopez-Serrano v. Rockmore*,
132 F. Supp. 3d 390 (E.D.N.Y. 2015) ...................................................................................9

*Maestas v. Kent County Mem. Hosp.*,
2023 WL 7385108 (D.R.I. Nov. 8, 2023) .............................................................................15

*McLean v. Garage Mgmt. Corp.*,
2011 WL 1143003 (S.D.N.Y. Mar. 29, 2011) .........................................................................5

*McLeod v. Verizon New York, Inc.*,
995 F. Supp. 2d 134 (E.D.N.Y 2014) ..................................................................................26

*Medrano v. Excel Corp.*,
985 F.2d 230 (5th Cir. 1993) ...............................................................................................23

*N.L.R.B. v. McClatchy Newspapers, Inc.*,
964 F.2d 1153 (D.C. Cir. 1992)...........................................................................................25

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013)..............................................................................................5, 9

*Neu v. Amelia U.S. LLC*,
226 A.D.3d 515 (1st Dept. 2024).........................................................................................20

*New York by James v. Citibank, N.A.*,
763 F. Supp. 3d 496 (S.D.N.Y. 2025)..................................................................................26

*O'Rourke v. Carmen M. Pariso, Inc.*,
501 F. Supp. 2d 445 (W.D.N.Y. 2007) .......................................................1, 10, 11, 12, 22

*Perry v. City of New York*,
78 F.4th 502 (2d Cir. 2023) ............................................................................................15, 16

*Rosario v. First Student Mgmt. LLC*,
247 F. Supp. 3d 560 (E.D. Pa. 2017) ..................................................................................22

*Rose v. RTN Federal Credit Union*,
1 F.4th 56 (1st Cir. 2021).....................................................................................................10

*Rueli v. Baystate Health, Inc.*,
835 F.3d 53 (1st Cir. 2016)...................................................................................................16

*Salinas v. Starjem Rest. Corp.*,
123 F. Supp. 3d 442 (S.D.N.Y. 2015)...................................................................................15

*Semper v. New York Methodist Hosp.*,
786 F. Supp. 2d 566 (E.D.N.Y. 2011) ............................................................................25, 26

iv

*Shearon v. Comfort Tech Mech. Co.*,
  936 F. Supp. 2d 143 (E.D.N.Y. 2013) ..................................................................................6

*Shoemaker v. United Parcel Serv., Inc.*,
  2011 WL 836998 (D. Idaho Feb. 10, 2011).................................................................27, 28

*State by Abrams v. New York City Conciliation & Appeals Bd.*,
  123 Misc. 2d 47 (Sup. Ct. 1984).........................................................................................26

*Stolarik v. N.Y. Times Co.*,
  323 F. Supp. 3d 523 (S.D.N.Y. 2018).................................................................5, 20, 21, 22

*Teamsters v. Lucas Flour Co.*,
  369 U.S. 95 (1962)..............................................................................................................24

*Thompson v. Eldorado Coffee Roasters Ltd.*,
  246 F. Supp. 3d 697 (E.D.N.Y. 2017) .............................................................................2, 27

*In re United Parcel Serv. Wage & Hour Cases*,
  2012 WL 2356630 (Cal. Ct. App. June 21, 2012) ..............................................................27

*Vaca v. Sipes*,
  386 U.S. 171 (1967).............................................................................................................26

*Vadino v. A. Valey Eng'rs*,
  903 F.2d 253 (3d Cir. 1990)................................................................................................18

*Vera v. Saks & Co.*,
  335 F.3d 109 (2d Cir. 2003)............................................................................1, 4, 6, 20, 23

*Whitehurst v. 1199SEIU United Healthcare Workers East*,
  928 F.3d 201 (2d Cir. 2019)..............................................................................................2, 6

## Statutes

28 U.S.C. § 1331................................................................................................................................5

28 U.S.C. § 1367................................................................................................................................5

29 U.S.C. § 158................................................................................................................................24

29 U.S.C. § 185(a) .............................................................................................................................4

29 U.S.C. § 207...........................................................................................................................17, 18

29 U.S.C. § 213(b)(1) ......................................................................................................................27

29 U.S.C. § 254.......................................................................................................................9, 10, 13

49 U.S.C. § 13102(14) ..................................................................................................27

49 U.S.C. § 31502(b) ...................................................................................................27

N.Y. Executive Law § 63(12) ......................................................2, 6, 22, 25, 26, 27

## **Other Authorities**

12 N.Y.C.R.R. § 142-2.1 ..............................................................................................12

12 N.Y.C.R.R. § 142-2.2 .............................................................................17, 12, 18, 28

Federal Rule of Civil Procedure 12 ..........................................................................1, 5

New York Attorney General, *Press Conference* (Dec. 15, 2025), available at
    ag.ny.gov/attorney-general-james-sues-ups-cheating-seasonal-workers-out-
    millions-dollars ....................................................................................................1

United Parcel Service, Inc. ("UPS") respectfully moves this Court to dismiss the First Amended Complaint ("FAC"), Dkt. 25, with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The New York Attorney General ("NYAG") announced its original complaint at a press conference flanked by the leadership of the International Brotherhood of Teamsters Local 804, underscoring the true nature of this action as a labor dispute.[1]  Indeed, the FAC is the latest chapter in a long-standing back-and-forth between UPS and the union concerning worker compensation under the terms of various collective bargaining agreements ("CBAs").  NYAG has taken up the union's cause by alleging that UPS failed to compensate a subset of its seasonal workers based on promises made to those workers in three CBAs regarding when their shifts begin and end, how delays are treated, what happens during meal breaks, and how to calculate overtime.  Because Plaintiff's claims substantially depend on and are inextricably intertwined with the CBAs, they are preempted by Section 301 of the Labor Management Relations Act (the "LMRA").  *See Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003).

Further, several of NYAG's claims attempt to enforce rights that arise exclusively under the CBAs, providing another reason those claims are preempted and must be dismissed. Specifically, the CBAs are the sole source of these workers' right to "promised wages" alleged in Count Two.  Likewise, the CBAs are the sole source of certain workers' right to "overtime" alleged in Counts Three and Five.  Because Plaintiff asserts claims that purport to enforce rights

---

[1]  *See* New York Attorney General, *Press Conference* (Dec. 15, 2025), available at ag.ny.gov/attorney-general-james-sues-ups-cheating-seasonal-workers-out-millions-dollars.

that arise under the CBAs, LMRA Section 301 precludes these claims. *Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201 (2d Cir. 2019).

In addition, because UPS is an interstate motor carrier subject to the Motor Carrier Act, certain seasonal employees are exempt from overtime requirements under federal law, warranting dismissal of Count Five as to those workers. *Thompson v. Eldorado Coffee Roasters Ltd.*, 246 F. Supp. 3d 697, 700 (E.D.N.Y. 2017).

Because all of NYAG's claims are preempted by Section 301, they should be treated as claims under that statute. NYAG has not and cannot plead the required exhaustion elements of a Section 301 claim, and is now time barred from pursuing the dispute process required under federal law. Alternatively, the claims independently fail under § 63(12) because they sound in breach of contract without the required allegations of unconscionability.

## ALLEGATIONS OF THE FAC

NYAG alleges that UPS underpaid the following two types of seasonal employees in New York during the peak package delivery season, which runs annually from October to January: (i) Driver Helpers who assist permanently-employed UPS Drivers with package deliveries, FAC ¶¶ 4, 19; and (ii) Seasonal Support Drivers (formerly called Personal Vehicle Drivers) who use their personal vehicles to deliver packages, *id.* ¶¶ 4, 20 (together, "Seasonal Workers"). Seasonal Workers help UPS meet increased demand during peak season by helping deliver UPS packages from all over the world to New Yorkers. *See id.* ¶¶ 2-4.

The FAC alleges that UPS: (1) failed to pay Seasonal Workers for compensable work before clocking in, *id.* ¶¶ 31-41, and after clocking out, *id.* ¶¶ 42-47; (2) failed to pay Seasonal Workers for compensable work during trainings, meal breaks, and other miscellaneous activities, *id.* ¶¶ 48-52; and (3) failed to keep accurate timesheet records, and in some instances, altered timesheets. *Id.* ¶¶ 53-56.

These wage and hour issues are governed by six CBAs: (i) the 2023 National Master United Parcel Service Agreement, *see* Ex. 1 to Declaration of Manisha M. Sheth in Support of UPS's Motion to Dismiss ("2023 Master CBA"); (ii) the 2023 Local 804 and United Parcel Service Supplemental Agreement, *see* Ex. 2 to Sheth Decl. ("2023 Local 804 CBA"); (iii) the 2023 Upstate/West New York and United Parcel Service Rider, *see* Ex. 3 to Sheth Decl. ("2023 Upstate/West CBA"); (iv) the 2018 National Master United Parcel Service Agreement, *see* Ex. 4 to Sheth Decl. ("2018 Master CBA"); (v) the 2018 Local 804 and United Parcel Service Supplemental Agreement, *see* Ex. 5 to Sheth Decl. ("2018 Local 804 CBA"); and (vi) the 2018 Upstate/West New York and United Parcel Service Rider, *see* Ex. 6 to Sheth Decl. ("2018 Upstate/West CBA").

Among other things, the CBAs define compensable time, including when shifts begin and end. *See, e.g.*, 2023 Master CBA, Art. 17; 2023 Upstate/West CBA, Art. 53.1; 2023 Local 804 CBA, Art. 4.1. They direct how employees should clock in and out, *see* 2023 Local 804 CBA, Art. 31; how to account for delays, *see* 2023 Master CBA, Art. 17; 2023 Local 804 CBA, Art. 2.12(3); how employees are entitled to earn a higher rates of base pay, *see* 2023 Local 804 CBA, Art. 3.5(a); *id.* at Art. 6.1(b); 2023 Upstate/West CBA, Art. 53.2; and the circumstances under which employees earn overtime pay and the resulting overtime rate, *see* 2023 Local 804 CBA Art. 3.1(a), 3.5(a), 3.6; 2023 Upstate/West CBA Art. 69.1. *Accord* 2018 Master CBA, Art. 17; 2018 Local 804 CBA, Art. 4.1, 2.13(3), 3.1(a), 3.5(a), 3.6, 6.1(b), 31; 2018 Upstate/West CBA, Art. 53.1-53.2, 69.1.

The CBAs also dictate how much time employees are allowed for meal breaks and whether such time is compensable. *See, e.g.*, 2023 Local 804 CBA, Art. 5.1(a); 2023 Upstate/West CBA, Art. 59. They also govern the compensability of training time. 2023 Master

3

CBA, Art. 17.  The CBAs contain provisions that specify UPS's obligations regarding recording time worked.  *Id.* at Art. 12.  Finally, the CBAs contain mandatory grievance procedures.  *See id.* at Art. 8; 2023 Local 804 CBA Art. 18.1; 2023 Upstate/West CBA Art. 46.1.  *Accord* 2018 Master CBA, Art. 8, 12, 17; 2018 Local 804 CBA, Art. 5.1(a), 18.1; 2018 Upstate/West CBA, Art. 46.1, 59.

## JURISDICTION

NYAG commenced this action in New York State Court.  *See* Ex. A to Notice of Removal, Dkt. 1-1.  On January 14, 2026, UPS removed this action, outlining two independent jurisdictional grounds.  *See* Notice of Removal, Dkt. 1.

*First*, all of NYAG's claims are preempted by LMRA Section 301 or are deemed to arise under that statute, placing them squarely within this Court's jurisdiction.  29 U.S.C. § 185(a); *see Vera v. Saks & Co.*, 335 F.3d 109, 115-16 (2d Cir. 2003); *Finkel v. Structure Tone, LLC*, 782 F. Supp. 3d 130, 144 (S.D.N.Y. 2025) (Broderick, J.) (denying motion to remand because of LMRA preemption).

*Second*, this Court has jurisdiction over the Fourth and Fifth Counts because they are expressly predicated on alleged violations of the FLSA and necessarily raise substantial questions under that statute.  *See* 28 U.S.C. § 1331; *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  And this Court has supplemental jurisdiction over any remaining state claims.  28 U.S.C. § 1367.

NYAG did not file a motion to remand and instead stipulated that it will not contest jurisdiction.  Dkt. 16.

4

**ARGUMENT**

**I.     LMRA SECTION 301 REQUIRES DISMISSAL OF ALL CLAIMS.**

LMRA Section 301, 29 U.S.C. § 185, preempts all of NYAG's claims because they require interpretation of the CBAs or arise out of rights conferred by the CBAs.[2]  "[T]he preemptive force of [Section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 n.5 (1988); *Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201, 206 (2d Cir. 2019).  "[T]he pre-emptive effect of § 301" also "extend[s] beyond suits alleging contract violations."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).

Preemption under Section 301 is required in two types of cases: (1) where a plaintiff's claims are "substantially dependent on analysis of a collective-bargaining agreement; and (2) where a plaintiff brings "claims founded directly on rights created by collective-bargaining agreements."  *Whitehurst*, 928 F.3d at 206.  If "resolution of a state law claim is 'substantially

---

[2]  Courts routinely consider CBAs on motions to dismiss under LMRA Section 301 where they form the basis for some of plaintiff's claims.  *See, e.g., Stolarik v. N.Y. Times Co.*, 323 F. Supp. 3d 523, 543 (S.D.N.Y. 2018) (considering CBA not attached to complaint on motion to dismiss); *McLean v. Garage Mgmt. Corp.*, 2011 WL 1143003, at *1 n.1 (S.D.N.Y. Mar. 29, 2011) (considering CBA even though "not referenced in or appended to the Complaint"); *Eka v. Brookdale Hosp. Med. Ctr.*, 2016 WL 11263669, at *4 (E.D.N.Y. Sept. 2, 2016) (finding CBA incorporated by reference and integral to determining whether plaintiff was paid at proper rate).  Thus, although Plaintiff avoids expressly referencing the CBAs, they may be considered here because the FAC pursues "promised wages" purportedly guaranteed in those agreements, FAC ¶¶ 90-98, and repeatedly discusses practices directly governed by the CBAs.  "The interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint."  *Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012).  In any event, the Court may consider the CBAs by converting this motion to a summary judgment motion pursuant to Federal Rule of Civil Procedure 12(d).  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-03 (2d Cir. 2013) (recognizing that court could have converted motion to dismiss to motion for summary judgment to allow consideration of CBA that was not attached to complaint).

dependent' upon or 'inextricably intertwined' with analysis of the terms of a CBA, the state law claim 'must either be treated as a § 301 claim [under the LMRA], or dismissed as pre-empted by federal labor-contract law.'" *Id.* at 206-07 (quoting *Allis-Chalmers*, 471 U.S. at 213, 220); *see also Vera*, 335 F.3d at 114 (2d Cir. 2003) (same). Section 301 has "unusual preemptive power" that confers federal jurisdiction even when a complaint does "not mention the federal provision and appear[s] to plead an adequate claim for relief" under state law. *Livadas v. Bradshaw,* 512 U.S. 107, 122 n.16 (1994).

Moreover, preemption applies regardless of whether the plaintiff is party to the CBA. The proper inquiry is "whether the claim is inextricably intertwined with the terms of a CBA, *not* the individual status of the [litigant] as a party to the CBA." *Finkel*, 782 F. Supp. 3d at 144 (emphasis added and alterations accepted); *see also Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 154 (E.D.N.Y. 2013) (preempting CBA-governed claims against employer, even when plaintiff was not union member). That NYAG brings this case under Executive Law § 63(12) does not change the analysis. *Cf. Connecticut v. YP Advert. & Publ'g LLC*, 2017 WL 810279, at *6-8 (D. Conn. Mar. 1, 2017) (state officials' claims preempted by Section 301).

Here, all of NYAG's claims are preempted. *First*, each claim depends on threshold issues relating to the circumstances under which seasonal workers are entitled to compensation and their rates of pay, which are substantially dependent on and inextricably intertwined with the CBAs. *Second*, the Second and Fifth Counts impermissibly seek to enforce rights that arise directly from the CBAs. The unpaid "promised wages" claim (Count 2) arises entirely from promises memorialized in the CBAs, and the federal overtime claim (Count 5) for Driver Helpers likewise arises entirely under the CBAs because Driver Helpers are exempted from

6

FLSA overtime under the Motor Carrier Safety Act ("MCA").  *Third*, NYAG's claims challenge the legality of CBA provisions and seek injunctive relief inconsistent with the CBAs.

### A.  The CBAs Govern All Seasonal Workers.

As a threshold matter, there can be no dispute that Seasonal Workers are covered by the applicable CBAs.  The 2023 Master CBA includes "Seasonal Support Drivers" in Article 26 and states they are "Union members."  2023 Master CBA, Art. 26.1(f).  The 2018 Master CBA likewise contemplates that employees who drive, load, or unload packages must be members of the bargaining unit, and states UPS will "hire a sufficient number of employees to handle peak volume."  2018 Master CBA, Art. 1.1, 1.2, 26.1(c).  The Local 804 CBAs and the Upstate/West CBAs operate on the Master CBAs' terms regarding covered employees in the bargaining unit.  *See* 2023 Master CBA, Art. 2; 2018 Master CBA, Art. 2.  Section 301 preemption thus protects Seasonal Workers' rights and obligations under those agreements.  *See, e.g.*, *Finkel*, 782 F. Supp. 3d at 143 (holding state-law claim preempted where plaintiff was beneficiary of CBA).  As demonstrated below, all of NYAG's claims are inextricably intertwined with the CBAs, and thus, are preempted and must be dismissed.

### B.  The FAC Is Entirely Preempted By LMRA Section 301

#### 1.  *Every Count Substantially Depends On And Is Inextricably Intertwined With The CBAs.*

##### (a)  *Assessing Compensability of Time Worked Requires Interpretation of the CBAs.*

Whether Section 301 preempts NYAG's claims depends on "the 'legal character' of the claims[s]" and "consideration of the elements of plaintiffs' stated claims."  *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) (quoting *Livadas*, 512 U.S. at 123-24).  Here, each of Plaintiff's claims center on UPS's alleged failure to compensate its Seasonal

Workers for time worked before shifts, after shifts, and miscellaneous times like meal breaks and training.

All claims allege that UPS failed to properly pay or account for *hours worked* by Seasonal Workers, which is tied directly to the CBAs. Counts One and Four allege violations of New York and federal minimum wage laws, respectively. FAC ¶¶ 80-89, 110-121. "Under the FLSA and NYLL, an employee cannot state a claim for a minimum wage violation unless her average hourly wage falls below the minimum wage." *Baldia v. RN Express Staffing Registry, LLC*, 633 F. Supp. 3d 693, 712 (S.D.N.Y. 2022). That average hourly wage depends on "*hours actually worked*." *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 401-02 (E.D.N.Y. 2015) (emphasis added). Count Two alleges violations of New York's promised wage law, which in substance prohibits employers from improperly deducting from the "wages" promised to an employee, NYLL § 193(1), including, as in this case, when "[w]ages" are "determined on a time … basis," NYLL §190(1) (emphasis added); *see also* FAC ¶¶ 90-98. Counts Three and Five allege violations of New York and federal overtime laws, respectively. FAC ¶¶ 99-109, 122-34. Both these claims depend on whether an employee "*worked* more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (emphasis added). Counts Six and Seven allege derivative notice and record-keeping violations that are premised on the same allegations relating to compensable time. FAC ¶¶ 135-52.

Each of Plaintiff's claims requires a threshold determination regarding whether any alleged off-the-clock work is compensable. That determination, in turn, is substantially dependent on and inextricably intertwined with the CBAs. Indeed, under both the FLSA and NYLL, identifying compensable time requires consideration of "all the circumstances,"

8

including "scrutiny and construction of the agreements between particular parties." *Aquino v. Uber Technologies, Inc.*, 671 F. Supp. 3d 338, 347 (S.D.N.Y. 2023) (dismissing FLSA and NYLL minimum wage claims based on wait times).  Moreover, 29 U.S.C. § 254(b)(1) looks to CBAs to provide for the compensability of preliminary and postliminary activities.  The CBAs are a necessary part of the analysis, as neither federal nor state law provide a complete definition of what counts as time worked.  The FLSA does "not define 'work' or 'workweek.'" *Integrity Staffing Solutions v. Busk*, 574 U.S. 27, 31 (2014).  Instead, the FLSA looks to the "express provisions" of a CBA as a basis to qualify preliminary and postliminary tasks as "time worked." 29 U.S.C. § 254(b)(1).[3]

Courts consistently find preemption where interpretation of a CBA is required to resolve underlying questions about compensable work, especially questions around preliminary and postliminary activities.  *See, e.g., Rose v. RTN Federal Credit Union*, 1 F.4th 56, 62 (1st Cir. 2021) ("[A]ny claim that entails a court determining what (if anything) is owed to an employee who is within a bargaining unit will almost always depend at least arguably on interpretations and applications of the CBA at issue." (cleaned up)); *Curry v. Kraft Foods Global, Inc.*, 2012 WL 104627, at *6 (N.D. Ill. Jan. 12, 2012) (dismissing FLSA and state-law claims as preempted where "the Court must scrutinize the CBA to decide if 'work' as defined in the CBA includes" allegedly unpaid time); *Clee v. MVM, Inc.*, 91 F. Supp. 3d 54 (D. Mass. 2015) (similar); *Carter v. Tyson Foods Inc.*, 2009 WL 4790761, at *7 (N.D. Ind. Dec. 3, 2009) (similar).

In *O'Rourke v. Carmen M. Pariso, Inc.*, plaintiffs alleged that their employer failed to pay them for time spent "performing inspections of the trucks assigned to them each day,"

---

[3]  Under the Portal-to-Portal Act, failure to pay an employee for "activities which are preliminary and postliminary" to an employee's "principal activities" cannot give rise to FLSA liability.  29 U.S.C. § 254(a).

"washing the assigned trucks," and "shoveling snow out of the boxes of the assigned trucks" prior to their shifts. 501 F. Supp. 2d 445, 447 (W.D.N.Y. 2007). The court dismissed all claims, including NYLL-based claims, as preempted because "the CBAs provide compensation rates, including overtime, *hours for work*, and requirements for drivers relating to maintenance." *Id.* at 450 (emphasis added). The court noted that "regardless of the specific legal theory of recovery … Plaintiffs' entitlement to any part of the back-pay sought under the Complaint is 'inextricably intertwined' with relevant provisions of the CBAs." *Id.*

Similarly, in *Diaz v. New York Paving Inc.*, plaintiffs alleged that their employer failed to compensate them for "work done off the clock," including "work performed at the beginning of each day prior to the scheduled start time at an off-site job location and at the end of each day after the last off-site job location." 2025 WL 1220924, at *1 (S.D.N.Y. Apr. 24, 2025) (citations omitted). The Court held that CBA provisions defining compensable time "directly contradict[ed]" the plaintiffs' theory of liability under state and federal law, and "whether the employee is entitled to be paid—at all—for pre and post shift presence/work" was inextricably intertwined with the CBAs. *Id.* at *2-3.

The same is true here. Plaintiff's claims are substantially dependent on or inextricably intertwined with the CBAs because each depends on determining what activities and hours are "compensable"—a determination that requires interpreting multiple provisions across multiple CBAs. *See, e.g.*, *O'Rourke*, 501 F. Supp. 2d at 449; *Diaz*, 2025 WL 1220924, at *2-3.

**Starting Work and Ending Work.** Plaintiff alleges UPS did not pay certain Seasonal Workers for time before their shift had started or after their shift had ended, including wait time, training time, commute time from centers to delivery routes, and time returning equipment and undelivered packages to a UPS facility. FAC ¶¶ 31-48, 50-51. The CBAs govern what

10

constitutes "work" by promising compensation for "all time spent in service of the Employer" and by specifying where and how Seasonal Workers clock in and out. 2023 Master CBA, Art. 17. The CBAs also state that compensable time begins when "the employee is ordered to report for work *and* registers in." *Id.* (emphasis added). Compensable time ends when the employee is "effectively released from duty." *Id. See also* 2023 Upstate/West CBA, Art. 53.1 (employees "shall be paid from the time they are told to report" without a punch-in requirement; compensable time ends upon return to home center); 2023 Local 804 CBA, Art. 31 (timecard requirements). *Accord* 2018 Master CBA, Art. 17; 2018 Upstate/West CBA, Art. 53.1; 2018 Local 804 CBA, Art. 31.

To evaluate the FLSA claims, this Court will need to interpret whether Seasonal Workers' wait time, training time, commute time, and time spent returning equipment meets the "service of the employer" definition, as well as the provisions of the CBA governing the beginning and ending of shifts. *Banks v. First Student Mgmt. LLC* provides a close analogy involving one of the same key CBA terms. 237 F. Supp. 3d 397, 406 (E.D. La. 2017). There, Teamster-affiliated drivers complained of "reporting to work, standing in line, and receiving job assignments, that each [] driver must complete before … being 'on the clock.'" *Id.* The court found that because plaintiffs' claims required an assessment of "what activities constitute 'all time *spent in the service of the Employer*' under the terms of the [CBA]," the plaintiffs' "claims [were] preempted by Section 301 of the LMRA." *Id.* (emphasis added).

These same CBA terms also bear on Plaintiff's NYLL minimum wage claims.[4] In particular, adjudicating the NYLL allegations requires the Court to determine whether the

---

[4] NYLL overtime claims are evaluated in "the manner and methods provided in [the FLSA]." 12 N.Y.C.R.R. § 142-2.2(a).

11

alleged off-the-clock work time is "time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer," and whether travel time "is part of the duties of the employee." 12 N.Y.C.R.R. § 142-2.1(b). Neither the "work" nor the "duties" of Seasonal Workers are conclusively defined under the NYLL. To fill the gaps in the NYLL's definitions, the CBAs must be consulted and interpreted, particularly because the CBAs' timekeeping provisions define "whether the employee is entitled to be paid—at all—for pre and post shift presence/work." *Diaz*, 2025 WL 1220924, at *3; *O'Rourke*, 501 F. Supp. 2d at 449.

Defining the beginning and end of Seasonal Workers' paid-for time also turns on the Portal-to-Portal Act. "[N]ot all work-related activities constitute 'work or employment' that must be compensated." *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 589 (2d Cir. 2007). Only principal activities—activities that form an "intrinsic element" of the employee's function—are compensable. *Integrity Staffing Solutions*, 574 U.S. at 33, 35 (security screenings were not principal activities of warehouse employees); *Kasiotis v. AWP, Inc.*, No. 5:19CV648, 2022 WL 4366972, at *9 (N.D. Ohio Sept. 16, 2022) (dismissing FLSA claims under the Portal-to-Portal Act because returning tools to the employer was not a principal activity of a driver). Waiting for work to begin is not an "intrinsic element" of handling peak volume. *See Gorman*, 488 F.3d at 591 ("[A]waiting the first principal activity of the workday is not itself a principal activity."); 29 U.S.C. § 254(a). If any FLSA liability exists for these non-principal activities, it can only be because the CBAs require it. *See* 29 U.S.C. § 254(b)(1).

The Court must interpret the CBAs to evaluate Portal-to-Portal Act limitations. The CBAs, for example, specify that Seasonal Workers' purpose is to "handle peak volume," 2023 Master CBA, Art. 26, and broadly define compensable time as "time spent in service of the

12

Employer," *id.* at Art. 17.  *Accord* 2018 Master CBA, Art. 26; *id.* at Art. 17.  The Court will necessarily have to interpret these contractual phrases to resolve Plaintiff's claims.

**Delays.**  Plaintiff also alleges that workers were not compensated for delays or wait time. FAC ¶¶ 32-34, 37-41.  The CBAs govern these issues too.  For example, "time lost due to delays as a result of overloads or certificate violations … which occur through no fault of the driver, shall be paid for by the Employer."  2023 Master CBA, Art. 17.  "If a package helper is scheduled to meet a driver and the driver is late to the scheduled meet point, the helper's hours will commence from the scheduled time of the meet."  2023 Local 804 CBA, Art. 2.12(3). *Accord* 2018 Master CBA, Art. 17; 2018 Local 804 CBA, Art. 2.13(3).

To adjudicate these allegations, this Court would need to decide what constitutes "delay," under what circumstances delay caused "time lost," and whether the delay was the "result of overloads or certificate violations" or the "fault of the driver."  2023 Master CBA, Art. 17; *accord* 2018 Master CBA, Art. 17.  This Court would also need to assess whether the no-fault provisions of the Master CBAs impact the driver-delay provisions in the Local 804 CBAs. These are quintessential terms that raise "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement."  *Allis-Chalmers*, 471 U.S. at 211.

In *Davis v. Northeast Ctr. For Youth & Fams., Inc*., plaintiff alleged her employer unlawfully deducted compensable time from her timesheets.  662 F. Supp. 3d 151, 157 (D. Mass. 2023).  The Court dismissed the claims as preempted because the CBA permitted the employer to reduce pay for late arrivals and absences, depending on whether the lateness was "excusable" and whether deductions were "proportionate[]" to the plaintiff's lateness and absences.  *Id.* Those terms were sufficiently open-ended that the Court needed to interpret the CBA to

13

"determine whether the unpaid compensation was indeed proportional to lateness or absence as well as whether an absence or lateness was excusable." *Id.* *Davis* commands the same result here.

**Meal times.** Plaintiff alleges that certain Seasonal Workers were not paid for working through meal times. FAC ¶¶ 50, 55. This is also inextricably intertwined with the CBAs. The Local 804 CBAs allow sixty minutes' meal time for each day worked, which "shall be marked on the time card immediately at the start of such period." 2023 Local 804 CBA, Art. 5.1(f). Such meal times "will not be counted as time worked by such driver and helper," *id.* at 5.1(a), and "[t]here shall be no work" during an employee's meal period, *id.* at 5.1(e); *see also* 2023 Upstate/West CBA, Art. 59 (emphasis added) ("No employee shall be paid for their lunch period *unless* they are instructed to work thru their lunch period by their Employer."); *accord* 2018 Local 804 CBA, Art. 5.1(a), (e), (f); 2018 Upstate/West CBA, Art. 59.

Whether Plaintiff's unpaid-meal-time allegations have merit under the NYLL or FLSA will depend on assessing compliance with these CBA provisions, including whether Seasonal Workers documented their meals and followed the meal-time procedures set forth in the agreements. *See Maestas v. Kent County Mem. Hosp.*, 2023 WL 7385108 (D.R.I. Nov. 8, 2023). In *Maestas*, Section 301 preempted claims that an employer "followed a policy and practice of automatically deducting time from each shift for one or more meal breaks" where a CBA governed "when employees can take meal breaks during their shifts." *Id.* at *2-3. The Court called it "obvious that resolution of Plaintiffs' state statutory claims based on allegations that Defendants made automatic time deductions for meal breaks" would "depend[] on an interpretation of the CBAs' terms" governing meal breaks. *Id.* at *3. Because NYAG's meal-time allegations are virtually identical, they should be preempted as well.

14

NYAG also must plead that UPS had constructive knowledge that Seasonal Workers worked through meal breaks, which the CBAs directly address. *Perry v. City of New York*, 78 F.4th 502, 513 (2d Cir. 2023) ("[A]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing."); *see also Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (noting actual or constructive knowledge of purportedly unpaid work is element of off-the-clock work claims). "The constructive knowledge inquiry is intertwined with an analysis of the employer's duty to inquire into what workers are doing, and what reasonable diligence the employer must perform to ensure that unauthorized hours are not being worked." *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 63 (1st Cir. 2016) (affirming dismissal wage-and-hour claims as preempted at pleading stage); *see also Perry*, 78 F.4th at 513 ("[E]stablishing a reasonable process for an employee to report work time is one way to exercise reasonable diligence, so an employer with such a system will not ordinarily be chargeable with constructive knowledge of unreported work."). UPS's constructive knowledge of alleged off-the-clock work will depend on whether Seasonal Workers followed CBA-required protocols to record their breaks.[5]

Plaintiff's allegations regarding meal breaks "directly contradicts the express terms" of the CBAs because the CBAs mandate meal breaks for employees who work over a certain number of hours. *Diaz*, 2025 WL 1220924, at *2 (dismissing FLSA and NYLL off-the-clock work claims as preempted where parties disputed whether CBAs required work outside of scheduled shift times); *see also Drake v. Hyundai Rotem USA, Corp.*, 2013 WL 4551228, at *3-4

---

[5]  UPS's knowledge of alleged off-the-clock work will also depend on operation of CBA provisions governing how Seasonal Workers should alert UPS to suspected timeclock inaccuracies. *See* 2023 Master CBA, Art. 12 (providing employees and union the right to inspect and contest time records); *id*., Art. 17 (providing employees ability to review hours and rates of pay and to report "shortages" in pay); *accord* 2018 Master CBA, Art. 12, 17.

15

(E.D. Pa. Aug. 28, 2013) (dismissing state-law unpaid meal-time claims as preempted where CBA governed policies concerning "allotted thirty minute lunch breaks"). Claims regarding meal breaks are therefore preempted.

**Wage Statements and Payroll Records**. Plaintiff alleges that UPS's wage statements and payroll records are inaccurate because they did not capture all "compensable hours." FAC ¶¶ 141, 150. The CBAs define what work hours are compensable, and Counts Six and Seven are derivative of and wholly dependent on Plaintiffs' other claims. Therefore, they are also preempted.

Because each of NYAG's claims is premised on the meaning of compensable time and that threshold issue is substantially dependent on and inextricably intertwined with the CBAs, Plaintiff's claims are preempted under LMRA Section 301.

> (b)    *Determining Seasonal Workers' Regular Rate Of Pay Would Require Substantial Analysis and Interpretation of the CBAs.*

Additionally, Counts Three, Five, Six and Seven require the Court to analyze the CBAs because each of these claims depends on each Seasonal Worker's regular rate of pay.[6] FAC ¶¶ 103, 127. Determining the regular rate requires the Court to determine whether each Seasonal Worker is entitled to contractual overtime pay rates under the CBAs, and if so, for how much.

---

[6]   The FLSA requires an employer to compensate weekly hours longer than forty "at a rate not less than one and one-half times the *regular rate* at which he is employed." 29 U.S.C. § 207(a)(1) (emphasis added); *cf.* FAC ¶¶ 127. The "regular rate," in turn, includes "all remuneration for employment" regularly earned, meaning "all payments which the parties have agreed shall be received regularly during the work [period]." *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 331 (S.D.N.Y. 2012) (collecting cases). Determining those agreed-to payments is often a question under a CBA. *Id.* Likewise, the NYLL requires an employer to "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate…." 12 N.Y.C.R.R. § 142-2.2. However, overtime pay under the NYLL for workers who are subject to provisions of the Motor Carrier Act are entitled to overtime calculated only by the "basic minimum hourly rate," not the "regular rate." 12 N.Y.C.R.R. § 142-2.2; *see also infra* Part II.

Because *contractual* overtime is a component of the "regular rate" of pay for *statutory* overtime under the FLSA and NYLL, it requires interpretation of the CBAs.  29 U.S.C. § 207(b); *Hoops v. Keyspan Energy*, 794 F. Supp. 2d 371, 377-78 (E.D.N.Y. 2011); *see also Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990) (requiring preemption "in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA").  Further, the FLSA and the NYLL recognize that premium pay may offset overtime underpayments.  *See* 29 U.S.C. § 207(e)(5)-(7), (h); 12 N.Y.C.R.R. § 142-2.2.

When an employee's "regular rate" of pay substantially depends on or is inextricably intertwined with the CBA, the claim is preempted and must be dismissed.  In *Hoops v. Keyspan Energy*, plaintiff alleged numerous violations of the NYLL, including a failure to pay overtime. 794 F. Supp. 2d at 375.  The overtime claim was preempted because it required the Court to determine "whether certain contractual shift differentials should have been included in the Plaintiff's [regular rate]," thus requiring "interpretation of the CBA."  *Id.* at 378, 379.  Courts regularly dismiss overtime claims that depend on analysis of a CBA to determine a regular rate of pay.  *See, e.g.*, *Firestone v. S. Cal. Gas Co.*, 281 F.3d 801, 802 (9th Cir. 2002) (interpretation of a CBA required where parties disagreed about which contractual rate was 'regular' rate and thus disagreed on whether plaintiffs received 'premium' for overtime work"); *Davis*, 662 F. Supp. 3d at 157 (holding overtime claims preempted because complaint referred differential pay and fluctuating base rate of pay, both of which were set forth in CBA); *Austin v. Ken's Foods, Inc.*, 772 F. Supp. 3d 163, 177 (D. Mass. 2025) (similar).

17

The same holdings apply here because the Seasonal Workers' regular rate of pay for overtime depends on multiple provisions in the CBAs.  First, under the Local 804 CBAs, the base pay depends on, among other things:

- When they were hired.  *See, e.g.*, 2023 Local 804 CBA, Art. 2.5 ("Peak season, package helpers hired between October 20th and January 21st of the following year shall receive a wage rate of prevailing minimum wage per hour."); 2018 Local 804 CBA, Art. 2.6 (same).

- If they are also a part-time UPS employee and if so, their seniority level and whether they have completed a probationary period.  2023 Local 804 CBA, Art. 2.5 ("Seniority part-time employees who work as peak season package helpers shall receive a wage rate of prevailing minimum wage per hour."); 2018 Local 804 CBA, Art. 2.6 (same).

Second, under the CBAs, the precise regular rate of pay could be the straight-time wage, the time and one-half wage, the double wage, or a combination thereof.  These premium-pay provisions may provide allowable offsets to make up for any alleged errors in computing overtime.  *Austin*, 772 F.Supp.3d at 177 (analyzing various forms of payment under CBA to determine if there was valid offset).  To determine the applicable rate, or the amount of premium pay that offset UPS's overtime obligations, the Court must consider the following relevant factors under the CBA:

- When in the day Seasonal Worker worked.  2023 Local 804 CBA Art. 3.5(a) (specifying "one and one-half times regular straight-time" rate for "[w]ork performed by an employee before their scheduled starting time or after their scheduled finishing time"); 2018 Local 804 CBA Art. 3.5(a).

- How many hours the Seasonal Worker has already worked that day, *see* 2023 Local 804 CBA Art. 3.1(a) (providing for "time and one-half" rates of pay "for work performed on any day in excess of eight (8) hours of actual working time"); 2018 Local 804 CBA Art. 3.1(a) (same), and whether the Seasonal Worker is a part time employee, *see also* 2023 Upstate/West CBA Art. 69.1 (contractual overtime for part-time employees like seasonal workers begins after "five and one-half (5 1/2) hours on their assigned shift"); 2018 Upstate/West CBA Art. 69.1 (same).

- When in the week the Seasonal Worker worked.  2023 Local 804 CBA Art. 3.6(b) ("double the regular straight-time rate shall be paid for all work scheduled to start

18

on Sunday and for overtime work on Sundays where the regular schedule of work extends into Sunday hours"); 2018 Local 804 CBA Art. 3.6(b) (same).[7]

For the same reason—because the calculation of overtime impacts the wage statements and payroll records—Plaintiff's claims that such records were inaccurate is also preempted.

In sum, Plaintiff's overtime claims (Counts Three and Five) and record-keeping claims (Counts Six and Seven) require interpretation of the CBAs to determine each employee's regular rate of pay, and are therefore preempted.

### 2.    *Counts Two And Five Seek to Enforce Rights Created by the CBAs.*

Section 301 preempts claims "expressly founded upon and derived from rights afforded by [a] CBA." *Stolarik v. N.Y. Times Co.*, 323 F. Supp. 3d 523, 543 (S.D.N.Y. 2018); *see also Vera*, 335 F.3d at 115. Count Two seeks promised wages. But resolution of what wages were promised to Seasonal Workers depends entirely on examining the CBAs to identify, catalogue, and interpret UPS's promises to these employees. FAC ¶¶ 90-98. Similarly, Count Five seeks overtime wages under the FLSA. But because Driver Helpers are exempt from federal statutory overtime rights under the MCA, *see infra* Part II, the CBAs are the only substantive source of those workers' right to overtime pay. Because these claims would not exist but for the CBAs, they are preempted under Section 301. *Stolarik*, 323 F. Supp. 3d at 543.

---

[7]    In addition, the CBAs specifically provide that "no time shall be subject to the application of more than one (1) overtime provision." 2023 Upstate/West CBA Art. 64.1; 2018 Upstate/West CBA Art. 64.1. This provision adds further ambiguity to the interaction between the CBAs and FLSA's mandate for overtime based on the regular rate of pay. Even though the CBA makes clear that no time shall be subject to more than one *contractual* overtime provision, the CBA must be interpreted to determine whether *statutory* overtime under the FLSA is an "overtime provision" to which that limitation would apply.

19

(a)    *Count Two Attempts to Enforce the CBA's Wage Provisions.*

Count Two alleges that UPS "failed to pay … promised wages for all hours worked" under NYLL § 193, which requires "full payment of wages at the agreed-upon rate for all hours worked." FAC ¶ 96 & n.2; *see also id.* ¶¶ 90-98. An underlying promise or agreement is essential to a § 193 claim. *See Neu v. Amelia U.S. LLC*, 226 A.D.3d 515, 515 (1st Dept. 2024) ("Indeed, a plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages." (cleaned up)). The CBAs are the sole source of the wages that were "promised" to or "agreed-upon" with the Seasonal Workers. *See, e.g.*, 2023 Master CBA Art. 26.1(f) (discussing hiring part-time seasonal hires as "W-2 employees and Union members"); 2023 Local 804 CBA, Art. 2.5 ("Peak season, package helpers … shall receive a wage rate of prevailing minimum wage per hour."). *Accord* 2018 Master CBA Art. 22.5(a) (part-time employee wages); 2018 Local 804 CBA, Art. 2.6 (Seasonal Worker wages).

In *Stolarik*, a union-employee plaintiff alleged that he never received "agreed-to wages and benefits" from his employer in violation of § 193. 323 F. Supp. 3d at 529. But the § 193 "unlawful wage deduction claim [was] … expressly founded upon and derived from rights afforded by the CBA" and the claim's substance was "to enforce the CBA itself," rather than "enforce state rights independent of the CBA." *Id.* at 543. Allowing the plaintiff to relabel a CBA-derived claim as a § 193 claim would nullify union grievance procedures, "elevate form over substance[,] and contravene the policies animating Section 301." *Id.* (quotation marks omitted) (quoting *Allis-Chalmers*, 471 U.S. at 211).

Plaintiffs bringing § 193 claims for failure to pay "promised wages" regularly face LMRA preemption because determining what was promised requires interpreting the CBA, and the deductions that the CBAs specifically authorized. *See, e.g.*, *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586 (E.D.N.Y. 2007) (§ 193 claim for commissions preempted where resolution

20

required interpreting CBA to determine what sales commissions were actually promised);

*O'Rourke v. Carmen M. Pariso*, 501 F. Supp. 2d 445, 449-50 (same, for hours worked under a

CBA).[8]

Because the Seasonal Workers' right to promised wages arises under the CBAs and

requires interpretation of the CBAs, Count Two is preempted and should be dismissed.

> (b)    *Count Five Seeks to Enforce CBA Overtime Provisions For MCA-Exempt Workers*

Count Five alleges FLSA statutory overtime violations.  FAC ¶¶ 122-134.  However,

Driver Helpers are exempt from FLSA overtime pay under the MCA.  *See infra* Part II.  For

these workers, the CBAs are the only source of overtime rights.  *See* 2023 Local 804 CBA, Art.

2.12(5); 2023 Local 804 CBA, Art. 3.1(a), 5(a)-(c); *accord* 2018 Local 804 CBA, Art. 2.13(5);

2018 Local 804 CBA, Art. 3.1(a), 5(a)-(c).  Because these overtime rights are "expressly

founded upon and derived from rights afforded by the CBA," they are preempted and should be

dismissed as to Driver Helpers.  *Stolarik*, 323 F. Supp. 3d at 543.

### 3.    *Plaintiff's Claims Challenge The Legality Of CBA Provisions.*

Plaintiff's claims are preempted for the additional reason that NYAG's request for

sweeping declaratory and injunctive relief, if granted, would declare CBA-required practices as

"illegal acts" under Executive Law § 63(12).  State-law claims that "challenge[] the legality of a

term of the CBA" necessarily require interpreting the CBA and are preempted.  *See Vera*, 335

---

[8]   Other state statutes providing a mechanism to collect on promised wages are also routinely dismissed as preempted under § 301.  *See, e.g.*, *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 569 (E.D. Pa. 2017) (when the contract relied upon to support Pennsylvania Wage Payment And Collection Law claim is a CBA, that claim is preempted by LMRA § 301); *Brown v. Illinois Bell Tel. Co.*, 2016 WL 212939, at *5 (N.D. Ill. Jan. 19, 2016) (holding state-law claim preempted where state "statute allows a worker to record wages owed under an employment contract" and the underlying contract was a CBA).

F.3d at 115-16; *Diaz*, 2025 WL 1220924, at *2 ("Plaintiffs' assertion that this provision of the [CBA] violates FLSA or NYLL further underscores that the claims are preempted."); *see also Medrano v. Excel Corp.*, 985 F.2d 230, 234 (5th Cir. 1993) (claim "essentially challenging the very legality" of CBA provision "without a doubt, is substantially dependent upon the meaning of a term of the CBA").  In *Vera*, plaintiff alleged that a CBA provision was illegal under New York law because it permitted an employer to reduce sales commissions based on returns of merchandise, and evaluating that claim would have required the Court to take a close look at the allegedly unlawful CBA provisions, thus requiring preemption.  335 F.3d at 115-16.

The same result is warranted here.  Plaintiff alleges that UPS's practice of calculating wages using the later of a scheduled start or clock-in time illegally "reduced compensable hours" under § 193.  FAC ¶ 54.  However, the CBAs explicitly *require* that "[t]ime shall be computed from the time that the employee is ordered to report for work *and* registers in."  2023 Master CBA, Art. 17 (emphasis added); 2023 Upstate/West CBA, Art. 53.1-53.2; *accord* 2018 Master CBA, Art. 17; 2018 Upstate/West CBA, Art. 53.1-53.2.  Plaintiff also alleges that UPS employees must be paid for certain preliminary, postliminary, and break time.  FAC ¶ 31-40. But that time is not compensable under the Portal-to-Portal Act unless the CBAs require it, and the CBAs: (i) limit compensable time in the event of delays, based on the cause of the delay and whether the driver was at fault, *see* 2023 Master CBA, Art. 17, and (ii) specifically instruct employees to document their meals and refrain from working during meals, *see* 2023 Local 804 CBA Art. 5.1(a).  *Accord* 2018 Master CBA, Art. 17; 2018 Local 804 CBA Art. 5.1.  By seeking relief that requires UPS to pay for delay time and meal-break work notwithstanding these provisions, NYAG challenges the legality of these CBA-required practices and seeks to compel UPS to unilaterally abandon them.

22

Moreover, granting NYAG's requested injunctive relief would undermine collective bargaining by giving agreements like the Master CBA—negotiated to govern UPS's labor relations nationwide—a different meaning in New York than elsewhere.  Federal law does not allow that result.  Section 301 is "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts," *Allis-Chalmers*, 471 U.S. at 209, and to use such law "uniformly to prevail over inconsistent local rules."  *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962); *see also Lingle*, 486 U.S. at 404 (LMRA preemption promotes the "consistent resolution of labor-management disputes").

The injunction NYAG seeks would amount to a court order that UPS must unilaterally change the terms of its CBAs, forcing UPS to violate its statutory duty under the National Labor Relations Act ("NLRA") that it bargain with its employees' union before changing "wages, hours, and other terms and conditions of employment."  29 U.S.C. § 158(a)(5), (d).  "A unilateral change as to a subject within this category violates the statutory duty to bargain."  *First Nat. Maint. Corp. v. N.L.R.B.*, 452 U.S. 666, 674-75 (1981).  NYAG's claims attack negotiated terms over "wages" and "hours," and strike at the heart of what Congress intended labor and management to discuss at the bargaining table.  29 U.S.C. § 158(a)(5); *see also Daily News of Los Angeles v. N.L.R.B.*, 73 F.3d 406, 411 (D.C. Cir. 1996) ("The [NLRA] is violated by a unilateral *change* in the existing wage structure whether that change be an increase or the denial of a scheduled increase.").  That type of relief would "injure[] the process of collective bargaining itself" because it "minimizes the influence of organized bargaining" and "emphasize[s] to the employees that there is no necessity for a collective bargaining agent." *N.L.R.B. v. McClatchy Newspapers, Inc.*, 964 F.2d 1153, 1162 (D.C. Cir. 1992)).

23

Indeed, the duty to bargain would become a dead letter if a state enforcement agency could force changes to CBAs in court after the bargaining process concludes. No court—and not even the National Labor Relations Board—may "use their authority to determine the results of [collective] bargaining." *Id.* at 1163. NYAG's requested injunctive relief flouts these principles and should be rejected.

### C. All Preempted Counts Must Be Dismissed.

Section 301 preemption requires dismissal of NYAG's claims. Each of the alleged predicate violations arises from (i) rights that are inextricably intertwined or substantially dependent upon a CBA; (ii) rights guaranteed by a CBA; or (iii) challenges to the legality of various CBA provisions; rendering them preempted by the LMRA. The consequence of preemption is clear: The preempted claim, even if based in statute or tort, "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 202.

Dismissal is the only option here. NYAG's claims, although alleged under Executive Law § 63(12), must be treated as Section 301 claims brought on behalf of Seasonal Workers. As such, they are subject to CBA grievance procedures.[9] *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 585 (E.D.N.Y. 2011). This exhaustion requirement is excused only "where the employer has repudiated the grievance procedure" or "where the union has breached its duty of fair representation." *Id*. NYAG has failed to allege that either condition is present here. *See Semper*, 786 F. Supp. 2d at 585; *see also Vaca v. Sipes*, 386 U.S. 171, 186 (1967). In addition,

---

[9] The Master CBAs subject "[a]ll grievances and/or questions of interpretation arising under the provisions of this National Master Agreement" to arbitration. 2023 Master CBA Art. 8.1; *id.* at Art. 8; 2023 Local 804 CBA Art. 18.1 (similar); 2023 Upstate/West CBA Art. 46.1(a) (similar); *accord* 2018 Master CBA Art. 8.1; 2018 Local 804 CBA Art. 18.1; 2018 Upstate/West CBA Art. 46.1(a).

NYAG's claims, if treated as § 301 claims, fail for the additional reason that they would be barred by a six-month statute of limitations. *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 142-43 (E.D.N.Y 2014).

Even if this Court were to find that NYAG's § 63(12) claims are *not* subject to LMRA preemption, dismissal is nevertheless warranted because the alleged predicate illegality for NYAG's § 63(12) claims is based on purported breaches of the CBAs in that the claims arise from violations of CBA-created rights or directly challenge CBA-required practices. *See supra* Part I.B.3. Section 63(12) allows NYAG to seek relief only against those who "engage in repeated fraudulent or illegal acts," and "illegal act" liability as alleged here "requires a 'predicate violation' of another law." *New York by James v. Citibank, N.A.*, 763 F. Supp. 3d 496, 535-36 (S.D.N.Y. 2025).

NYAG's claims are essentially breach of contract claims challenging the provisions of the CBAs. No New York or Federal court has held that allegedly breaching a contract—much less a collective-bargaining contract protected from interference by the states—can give rise to "illegal act" liability absent unconscionability, which NYAG does not allege. *See* § 63(12) (identifying "unconscionable contract provisions" but only as a species of fraud). Nor should § 63(12) be used "merely to vindicate the individual or private interests of certain citizens," especially "[i]f the aggrieved individual has an adequate remedy at law." *State by Abrams v. New York City Conciliation & Appeals Bd.*, 123 Misc. 2d 47, 49 (Sup. Ct. 1984).

Accordingly, NYAG's claims, although framed as § 63(12) claims, are preempted by Section 301 and should be dismissed because NYAG could never replead to satisfy the elements of a Section 301 claim and because its claims are untimely under federal law. Alternatively, the

25

claims independently fail under § 63(12) because they sound in breach of contract without allegations of unconscionability.

## II.    COUNT FIVE SHOULD BE DISMISSED AS TO DRIVER HELPERS BECAUSE THEY ARE EXEMPT FROM FLSA OVERTIME UNDER THE MOTOR CARRIER ACT.

Count Five, which alleges that UPS violated the FLSA by failing to pay overtime, FAC ¶¶ 122-34, should be dismissed with prejudice as to Driver Helpers because they are exempt from the FLSA's overtime requirements under the Motor Carrier Safety Act ("MCA").

The FLSA provides that its overtime pay provisions "shall not apply with respect to[] any employee [] the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [the MCA]." 29 U.S.C. § 213(b)(1). This exemption applies where the employer is a "motor carrier" and the employee's work affects the safe operation of motor vehicles in interstate commerce. *See* 49 U.S.C. § 31502(b); *see also Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 264 (E.D.N.Y. 2012).

UPS indisputably qualifies as a "motor carrier," *i.e.*, "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14); *see also id.* § 31501(2). Courts have repeatedly so held. *See In re United Parcel Serv. Wage & Hour Cases*, 2012 WL 2356630, at *1 (Cal. Ct. App. June 21, 2012) (dismissing MCA-barred overtime claims where "UPS is certified as a motor carrier by the United States Department of Transportation (DOT)"); *Shoemaker v. United Parcel Serv., Inc.*, 2011 WL 836998, at *11 (D. Idaho Feb. 10, 2011) (MCA overtime exception applied to UPS on-road supervisor).

Driver Helpers fall within the MCA exemption, because their activities "directly affect[] the safety of operation of motor vehicles ... in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Thompson*, 246 F. Supp. 3d at 700. The Supreme Court held that the first requirement, *i.e.*, work affecting the safe operation of motor vehicles, is satisfied as to

26

delivery drivers and driver helpers.  *See Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673-74 (1947).  Indeed, the *Levinson* Court held that "[t]here are four broad categories of workers whose duties are said to directly affect the safety of vehicle operation: drivers, mechanics, loaders, and *helpers of the first three*."  *Fox*, 865 F. Supp. 2d at 266 (emphasis added) (citing *Levinson*, 330 U.S. at 673); *see also Shoemaker*, 2011 WL 836998, at *8 (applying MCA exemption to UPS on-road supervisor).  That holding is directly on point:  Plaintiff brings claims on behalf of workers who "assist directly with package delivery" including "Driver Helpers [who] accompany Drivers of UPS trucks to help the Drivers deliver packages."  FAC ¶ 4.

The MCA's interstate commerce requirement is also satisfied.  Plaintiff describes interstate and international shipping as the keystone of UPS's business.  FAC ¶ 2.  And the core function of Driver Helpers is to assist drivers with delivering packages in UPS's global logistics network.  *Id.* ¶ 4.  That is more than enough to meet the interstate commerce requirement.  *See Shoemaker*, 2011 WL 836998, at *8 (UPS drivers "even though they may be driving intrastate, are involved in interstate commerce because they are on the last leg of the package's journey"); *see also Bilyou v. Dutchess Beer Distributors*, 300 F.3d 217, 223 (2d Cir. 2002) ("[T]he interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce.").

Because UPS satisfies both requirements for the MCA exemption from the FLSA overtime requirements, Count Five should be dismissed as to Driver Helpers.[10]

---

[10]   Count Three, which seeks NYLL overtime pay consisting of "one and one-half times the employee's *regular rate*," FAC ¶¶ 103, 107 (emphasis added), ignores that overtime pay for MCA-exempt employees is limited to "one and one-half times the *basic minimum hourly rate*." 12 N.Y.C.R.R. § 142-2.2 (emphasis added); *see also supra* Part I.B.1(b).

## CONCLUSION

For the reasons set forth above, UPS respectfully requests the Court to dismiss the FAC in its entirety with prejudice.

DATED: May 1, 2026

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP


By:    */s/ Manisha M. Sheth*
    Manisha M. Sheth
    Adam M. Abensohn
    Wing F. (Alex) Ng
    David E. Chardack

295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
manishasheth@quinnemanuel.com
adamabensohn@quinnemanuel.com
alexng@quinnemanuel.com
davidchardack@quinnemanuel.com

*Attorneys for Defendant United Parcel Service,*
    *Inc.*

28

## REQUEST FOR HEARING

The undersigned respectfully requests an opportunity to be heard on this motion. The undersigned respectfully submits that a hearing would be helpful to the Court and require approximately three hours of the Court's time.

DATED: May 1, 2026

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

By: ___/s/ Manisha M. Sheth_____
   Manisha M. Sheth
   Adam M. Abensohn
   Wing F. (Alex) Ng
   David E. Chardack

295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
manishasheth@quinnemanuel.com
adamabensohn@quinnemanuel.com
alexng@quinnemanuel.com
davidchardack@quinnemanuel.com

*Attorneys for Defendant United Parcel Service, Inc.*

29

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Manisha M. Sheth, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 8,746 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 1st day of May, 2026, in New York, New York.

*/s/ Manisha M. Sheth*
Manisha M. Sheth

*Attorney for Defendant*
*United Parcel Service, Inc.*
