**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK by LETITIA JAMES, Attorney General of the State of New York,<br><br>        Plaintiff,<br><br>        -against-<br><br>UNITED PARCEL SERVICE, INC.,<br><br>        Defendant. | Case No.: 1:26-cv-00341-VSB |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION TO DISMISS

Manisha M. Sheth
Adam M. Abensohn
Wing F. (Alex) Ng
David E. Chardack
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
manishasheth@quinnemanuel.com
adamabensohn@quinnemanuel.com
alexng@quinnemanuel.com
davidchardack@quinnemanuel.com

*Attorneys for Defendant United
   Parcel Service, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................1

I.    CONSIDERATION OF THE CBAS IS APPROPRIATE BECAUSE THEY ARE INTEGRAL TO THE FAC AND UNDISPUTABLY AUTHENTIC ................................1

II.    SECTION 301 OF THE LMRA REQUIRES DISMISSAL OF ALL CLAIMS.................4

      A.    UPS Is Not Estopped From Raising LMRA Preemption Under § 301....................4

      B.    NYAG's NYLL § 193 Claim Substantially Depends On The CBAs......................5

      C.    NYAG's Minimum-Wage and Overtime Claims are Inextricably Intertwined With Multiple CBA Terms That Govern Compensable Hours. ...........8

      D.    NYAG Seeks To Force UPS to Change CBA-Required Practices........................12

      E.    NYAG Misunderstands and Misstates the Consequence of § 301 Preemption. .........................................................................................................13

III.    THE FAC CONTAINS ALLEGATIONS SUFFICIENT TO DISMISS OVERTIME CLAIMS AS TO DRIVER HELPERS UNDER THE MOTOR CARRIER ACT .......................................................................................................14

CONCLUSION.........................................................................................................................15

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985)...............................................................................................................9

*Arroyo v. NYU Langone Hosp.*,
  2019 WL 5682628 (S.D.N.Y. Oct. 31, 2019).....................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................14

*Ashmore v. CGI Grp., Inc.*,
  923 F.3d 260 (2d Cir. 2019)..................................................................................................4

*Bilyou v. Dutchess Beer Distributors, Inc.*,
  300 F.3d 217 (2d Cir. 2002)................................................................................................15

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987)...............................................................................................................7

*Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*
  194 F Supp. 3d 221, 228 (S.D.N.Y. 2016)..........................................................................11

*People ex rel. Cuomo v. Coventry First LLC*,
  13 N.Y.3d 108 (2009) ..........................................................................................................13

*Dale v. L'Oreal USA, Inc.*,
  2023 WL 3984345 (E.D.N.Y. June 13, 2023) .......................................................................3

*Diaz v. New York Paving Inc.*,
  2025 WL 1220924 (S.D.N.Y. Apr. 24, 2025)........................................................................9

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002)..............................................................................................................13

*Finkel v. Structure Tone, LLC*,
  782 F. Supp. 3d 130 (S.D.N.Y. 2025)..................................................................................14

*Flowers Foods, Inc. v. Brock*,
  146 S. Ct. 1358 (2026)..........................................................................................................15

*United States ex rel. Foreman v. Aecom*,
  2026 WL 772795 (2d Cir. Mar. 19, 2026).............................................................................4

*Freeman v. Nat'l Broad. Co.*,
   80 F.3d 78 (2d Cir. 1996) ..................................................................................................8

*Gillett v. Zara, Inc.*,
   2022 WL 3285275 (S.D.N.Y., Aug. 10, 2022)....................................................................2

*Glob. Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)...........................................................................................1, 2

*Gorman v. Consolidated Edison Corp.*,
   488 F.3d 586 (2d Cir. 2007)...............................................................................................8

*Hedges v. United Parcel Serv. of Am., Inc.*,
   2020 WL 4481657 (E.D.N.Y. Aug. 4, 2020)...................................................................4, 5

*Integrity Staffing Solutions v. Busk*,
   574 U.S. 27 (2014)...............................................................................................................8

*Isaacs v. Central Parking Sys. of N.Y., Inc.*,
   2012 WL 957494 (E.D.N.Y. Feb. 27, 2012).....................................................................10

*Jankousky v. N. Fork Bancorp., Inc.*,
   2011 WL 1118602 (S.D.N.Y. Mar. 23, 2011) ....................................................................5

*Khan v. IBI Armored Servs.*,
   474 F. Supp. 2d 448 (E.D.N.Y. 2007) ..............................................................................15

*Levy v. Verizon Info. Servs., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007) ................................................................................6

*Lingle v. Norge Div. of Magic Chef*,
   486 U.S. 399 (1988).............................................................................................................6

*Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*,
   2024 WL 966077 (S.D.N.Y. Mar. 6, 2024) ........................................................................3

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006).................................................................................................2

*Medo Photo Supply Corp. v. NLRB*,
   321 U.S. 678 (1944).............................................................................................................6

*Medrano v. Excel Corp.*,
   985 F.2d 230 (5th Cir. 1993) .............................................................................................12

*Murray v. United Parcels Service, Inc.*,
   2022 WL 4468295 (E.D.N.Y. Sept. 25, 2022) ..................................................................11

iii

*NLRB v. Allis-Chalmers Mfg. Co.*,
   388 U.S. 175 (1967)................................................................................................6

*Panczykowski v. Laborers' Int'l Union of N. Am.*,
   2 F. App'x 157 (2d Cir. 2001) ...............................................................................14

*Perry v. City of New York*,
   78 F.4th 502 (2d Cir. 2023) ...................................................................................12

*Polanco v. Brookdale Hosp. Med. Ctr.*
   819 F. Supp. 2d 129, 131 (E.D.N.Y 2011) .............................................................10

*Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*,
   92 F.4th 415 (2d Cir. 2024) .....................................................................................2

*Richardson v. Townsquare Media, Inc.*,
   174 F.4th 299 (2d Cir. 2026) ...................................................................................2

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
   369 F.3d 113 (2d Cir. 2004)......................................................................................4

*S.E.C. v. Musk*,
   2026 WL 279790 (D.D.C. Feb. 3, 2026) ................................................................13

*Severin v. Project OHR, Inc*
   2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011)...........................................................11

*Short v. Churchill Benefit Corp.*,
   2016 WL 8711349 (E.D.N.Y. Apr. 8, 2016) ..........................................................5, 7

*State by Abrams v. Stevens*,
   497 N.Y.S.2d 812 (Sup. Ct. 1985).............................................................................8

*Swanson v. Manhattan Beer Distributors, LLC*,
   2018 WL 4008012 (E.D.N.Y. July 10, 2018)..........................................................15

*Tzilin v. Jimmy G Const. Corp*,
   2024 WL 4309775 ....................................................................................................7

*Varney v. United Parcel Serv., Inc.*,
   2017 WL 11573252 (N.D.N.Y. Mar. 29, 2017) .......................................................10

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003)....................................................................................5, 6

## Statutes

29 U.S.C. § 158(a)(5)...............................................................................................7, 13

29 U.S.C. § 159(a) ..........................................................................................................................6

29 U.S.C. § 185(a) ...........................................................................................................1, 2, 4, 13

29 U.S.C. § 254(a) ...................................................................................................................8, 10

N.Y. Executive Law § 63(12) .......................................................................................................8

## Other Authorities

29 C.F.R. § 775.1 ...........................................................................................................................8

29 C.F.R. § 778.223 .......................................................................................................................8

29 C.F.R. § 782.4 .........................................................................................................................15

29 C.F.R. § 785.14 .........................................................................................................................8

29 C.F.R. § 785.15 .........................................................................................................................8

29 C.F.R. § 785.18 .........................................................................................................................8

29 C.F.R. § 785.19 .........................................................................................................................8

Federal Rule of Civil Procedure 12(b)(6) .....................................................................................2

United Parcel Service, Inc. ("UPS") respectfully submits this reply memorandum of law in further support of its motion to dismiss the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

Plaintiff New York Attorney General ("NYAG") does not deny that it brought this action at the behest of the Teamsters union representing UPS's Seasonal Workers—confirming this matter is a dispute "between an employer and a labor organization." 29 U.S.C. § 185(a). Nor does NYAG deny that the CBAs attached to UPS's motion are authentic and govern the employment relationship between UPS and Seasonal Workers relating to pay, hours, breaks, and timekeeping. Instead, NYAG argues that because it carefully drafted its pleadings to avoid mentioning the CBAs, the Court must pretend those CBAs do not exist. That is not the law.

A plaintiff cannot insulate its claims from dismissal through "clever drafting." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). The FAC targets specific timekeeping and recordkeeping practices that are set forth in and directly governed by the CBAs—practices the Teamsters brought to NYAG's attention as the basis for this lawsuit. The FAC's allegations require the Court to interpret CBA provisions to determine when compensable time begins and ends, how breaks are administered and recorded, and how disputes over hours are resolved. This makes NYAG's claims inextricably intertwined with and substantially dependent on those provisions. As such, NYAG's claims are preempted by the LMRA and must be dismissed.

## ARGUMENT

**I.    CONSIDERATION OF THE CBAs IS APPROPRIATE BECAUSE THEY ARE INTEGRAL TO THE FAC AND UNDISPUTABLY AUTHENTIC**

NYAG cannot avoid consideration of the CBAs by strategically omitting them from its complaint. Opp. at 2. Under the federal rules, a document that is not incorporated by reference

1

in the complaint can nonetheless be integral to the complaint and considered on a motion to dismiss. *See Richardson v. Townsquare Media, Inc.*, 174 F.4th 299, 316 (2d Cir. 2026). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157. This exception prevents plaintiffs from crafting complaints invulnerable to Rule 12(b)(6) by "clever drafting." *Id.* Considering documents integral to a complaint is especially appropriate where "there is no colorable dispute regarding the authenticity of the document." *Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 437 (2d Cir. 2024) ("*RACER*").[1]

This doctrine is especially apt here. A document is "integral" to a complaint "where the complaint relies heavily upon its terms and effect." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). The crux of the complaint is that UPS purportedly "fails to keep accurate records of [Seasonal Workers'] work time," causing alleged underpayment of wages. FAC ¶ 7-11. The CBAs are the equivalent of employment contracts between union workers and UPS in that the terms of the CBAs address what activities are compensable and how they should be recorded. Employment contracts are regularly considered integral to disputes that arise out of an

---

[1] Here, NYAG does not dispute the authenticity of the CBAs or argue that discovery is needed to establish authenticity, which makes this case different from *Gillett v. Zara, Inc.*, 2022 WL 3285275 (S.D.N.Y., Aug. 10, 2022). There, defendants sought LMRA dismissal based on "a term allegedly implied in the CBAs," *id.* at *7, informed by "past practice" that "became incorporated" into the parties' CBA, *id.* at *10. The court did not consider the CBAs or convert the 12(b) motion to summary judgment specifically because "questions remain about the nature of this alleged past practice." *Id.* Those concerns are not present here, where NYAG does not dispute the CBAs are authentic, accurate, and complete. *See RACER*, 92 F.4th at 437.

employer's promises to employees, including CBAs.  *See Dale v. L'Oreal USA, Inc.*, 2023 WL 3984345, at *2 (E.D.N.Y. June 13, 2023) (considering all employment contracts as integral to a complaint where plaintiff attached "only [one] Agreement as if it comprises the entirety of the parties' agreement"); *see also Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*, 2024 WL 966077, at *3 (S.D.N.Y. Mar. 6, 2024) (considering CBA integral to a complaint where "CBA is also the instrument through which the [defendant] recognizes the Union" and "the reason" for plaintiffs' allegations of wrongdoing).

Here, the terms of employment of the Seasonal Workers, who are all union members, are foundational to all of NYAG's claims, and those terms are set forth in the CBAs.  *See* FAC ¶¶ 18-19, 83, 93, 102, 113, 125, 138, 147.  More specifically, the FAC alleges that UPS: (i) improperly records when compensable time begins and ends, *id.* ¶ 54; (ii) improperly records start times when workers begin shifts on delivery routes rather than at a UPS facility, *id.* ¶¶ 32-35; and (iii) does not provide adequate access to timekeeping systems, *id.* ¶¶ 10, 29, 32, 55, 56. UPS's practices in each of these areas has been subject to collective bargaining and are governed by the CBAs.[2]  As such, the Court will need to interpret the CBAs to decide whether these allegations have merit.  *See, e.g.*, 2023 Master CBA Art. 17.  NYAG's remaining illegality allegations rest on references to these same CBA-governed practices.  FAC ¶¶ 6, 10, 11, 35, 41, 44, 47, 53, 58, 59, 64, 68, 86, 95, 106, 117, 130, 141, 150.  Because NYAG's allegations require interpretation of CBA terms, the CBAs are "integral" to the FAC and should be considered.[3]

---

[2]  NYAG launched its investigation after Teamsters raised concerns about alleged widespread nonpayment issues affecting Seasonal Workers.  It strains credulity for NYAG to now suggest that the Teamsters' bargaining relationship with UPS is "not relevant" to the FAC or that the FAC does not "even implicitly rely on any CBA."  Opp. at 2.

[3]  NYAG opposes conversion of this motion to summary judgment, asserting it "has the right to seek discovery" even though it conducted an extensive two-year investigation into this matter and pleaded nothing to challenge the CBAs' authenticity.  Opp. at 3-4.  Here, the CBAs give the

3

II.    **SECTION 301 OF THE LMRA REQUIRES DISMISSAL OF ALL CLAIMS**

A.    **UPS Is Not Estopped From Raising LMRA Preemption Under § 301.**

NYAG is wrong that UPS should be estopped from asserting LMRA preemption. *See*

Opp. at 19-20. "The doctrine of judicial estoppel prevents a party from asserting a *factual*

position in one legal proceeding that is contrary to a position that it successfully advanced in

another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.

2004) (emphasis added).[4]  NYAG argues that UPS raises a *legal* position here that is purportedly

inconsistent with its position in *Hedges v. United Parcel Service, Inc.*, No. 20-cv-870 (E.D.N.Y).

This point alone precludes estoppel.

Even if applicable to legal positions, judicial estoppel applies only where "(1) a party's

later position is clearly inconsistent with its earlier position, and (2) the party's former position

has been adopted in some way by the court in an earlier proceeding." *Ashmore v. CGI Grp., Inc.*,

923 F.3d 260, 272 (2d Cir. 2019).  NYAG cannot establish either element.[5]  First, in *Hedges*,

UPS moved to compel arbitration under pre-employment arbitration agreements, not the CBAs.

*See* Mot. to Compel Arbitration, *Hedges v. United Parcel Serv. of Am., Inc.*, Dkt. 16 at 1-3.

Thus, there is no inconsistency.  Second, the court resolved the motion on contract grounds

---

Court all the information it needs to grant summary judgment. *United States ex rel. Foreman v. Aecom*, 2026 WL 772795, at *2 (2d Cir. Mar. 19, 2026) (affirming conversion of a motion to dismiss to summary judgment where the legal effect of a contract was dispositive).

[4]  NYAG's sole citation on this point demonstrates only that "some courts" apply judicial estoppel to legal positions. *See* Opp. at 19-20 (quoting Moore's Federal Practice—Civil, § 134.30 (2025)).  However, none of these authorities are controlling, and the Second Circuit takes the opposite position. *See Rodal*, 369 F.3d at 118.

[5]  Further, in the Second Circuit, "[b]ecause the doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is *certain*." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (emphasis added).  NYAG does not mention this stringent requirement or explain why UPS's positions here and in *Hedges* would satisfy it.

4

concerning whether those agreements were enforceable, due to being non-mandatory subjects of bargaining for CBA purposes. *Hedges*, 2020 WL 4481657, at *1 (Aug. 4, 2020). NYAG is wrong that UPS argued "the CBA by its terms 'clearly and unmistakably' requires arbitration of the statutory claim." Opp. at 20. Indeed, the argument that the workers' statutory claims were independent of the CBA was not UPS's position; it was the *plaintiffs'* concession, which UPS quoted in reply. *See* Reply Br. in Support of Mot. to Compel Arbitration, *Hedges*, Dkt. 19 at 1, 6-7. Thus, UPS is not estopped from raising preemption here.

### B.    NYAG's NYLL § 193 Claim Substantially Depends On The CBAs.

NYAG contends that its promised-wage claim "arises from promises made by UPS directly to workers, not from any CBA," relying solely on the allegation that "UPS promises rates of pay through direct communications with Seasonal Delivery Workers around the time of hire." Opp. at 5 (citing FAC ¶ 21).[6] NYAG's position fails to address the requirements of an actionable NYLL § 193 claim, federal labor law, and basic tenets of New York contract law.

*First*, it is well settled that "a plaintiff cannot assert a statutory claim for wages under [§ 193] if he has no enforceable contractual right to those wages." *Short v. Churchill Benefit Corp.*, 2016 WL 8711349, at *9 (E.D.N.Y. Apr. 8, 2016) (collecting cases). Courts considering § 193 claims regularly undertake contractual analyses of the underlying wage promises because "compensation is 'earned' according to the terms of the agreement providing for it." *Jankousky v. N. Fork Bancorp., Inc.*, 2011 WL 1118602, at *4 (S.D.N.Y. Mar. 23, 2011); *see also Short*, 2016 WL 8711349, at *9-10 (applying contract law to determine promised wages under § 193); *Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (recognizing contractual defenses to § 193

---

[6]    NYAG also concedes that it "assumes that [Seasonal Workers] are non-exempt from overtime" under the Motor Carrier Act and disclaims seeking contractual overtime if the Court determines that some seasonal workers are overtime exempt. *See* Opp. at 8.

5

claim).  The § 193 claim is not "parallel" to the CBAs; it depends on interpreting the CBAs.

Opp. at 6 (quoting *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 408-10 (1988)).[7]

NYAG ignores these requirements, suggesting that it may sufficiently allege a § 193

claim on the threadbare allegation that "UPS communicates rates of pay to [Seasonal Workers]

around the time of hire, including through offer letters and other similar documentation," without

considering other terms of employment.  FAC ¶ 21; *see also* Opp. at 5-6 (citing same).  Those

communications, as alleged, merely convey start dates and rates of pay and do not address the

interpretation of compensable time.  As such, those documents cannot displace CBA terms.  To

be clear, UPS does not disclaim the hourly rates that were separately communicated to

prospective Seasonal Workers; UPS objects to considering those rates in isolation without also

considering other terms of the CBAs that detail how and when Seasonal Workers begin work,

end work, take breaks, and record these times.  *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d

586, 595 (E.D.N.Y. 2007), and *Vera*, 335 F.3d 109—neither of which NYAG attempts to

distinguish—are controlling.  In both cases, § 193 claims failed specifically because they

required the court to interpret *the entirety* of underlying CBA wage provisions to determine

wages, including granular CBA provisions about when wages were earned and what deductions

were permitted.  *Levy*, 498 F. Supp. 2d at 598; *Vera*, 335 F.3d at 115.

*Second*, federal law requires UPS to bargain *exclusively* with bargaining representatives

on matters concerning "wages, hours, and working conditions" of union members.  *NLRB v.*

*Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967) (citing 29 U.S.C. § 159(a)); *see also Medo*

---

[7]  *Lingle* involved a claim of retaliatory discharge, even though the plaintiff could have used
CBA grievance procedures to prosecute the same claim—true "parallelism."  *Id.*  By comparison,
there is no parallelism here, where § 193 looks to the parties' agreements as an element of the
claim.  Not surprisingly, even since *Lingle*, state statutory mechanisms to collect on promised
wages are routinely dismissed as preempted.  *See* Opening Br. at 19-21 & n.8 (collecting cases).

*Photo Supply Corp. v. NLRB*, 321 U.S. 678, 683 (1944) ("[I]t is a violation of the essential principle of collective bargaining and an infringement of the [NLRA] for the employer to disregard the bargaining representative by negotiating with individual employees.").  The CBAs also contain express provisions that prohibit UPS from contracting with individual employees in ways that would displace the CBAs, including terms on wages and hours.  *See* 2023 Master CBA at Art. 6.1 (UPS "agrees not to enter into, or attempt to enter into, any agreement or contract with its employees, either individually or collectively ... which in any way conflicts with the provisions of this Agreement" and that "[a]ny such Agreement or document *shall be null and void*" (emphasis added)); 2023 Local 804 CBA (the CBA is "the sole and complete agreement between them" and supersedes prior understandings).

*Third,* the allegation that UPS *communicated* wage rates does not suffice to allege the existence of a contract, which requires "an offer, acceptance, consideration, mutual assent, and intent to be bound," as well as a "meeting of the minds" that includes "agreement on all essential terms." *Short*, 2016 WL 8711349, at *10 (citations omitted).[8]  The offer letters and other communications are not enforceable contracts and do not address the issues in the FAC.[9]  The *only* enforceable contracts that govern Seasonal Workers' wages and hours are the CBAs.

---

[8]  NYAG cites a single off-point case to support its view that any communications about wages may be pled in isolation to support the existence of an actionable wage promise under § 193.  *See* Opp. at 5-6 (quoting *Tzilin v. Jimmy G Const. Corp*, 2024 WL 4309775, at *16).  *Tzilin* does not involve a § 193 claim, but instead pertains to NYLL § 198, a different statute about the calculation of damages.  2024 WL 4309775, at *16.

[9]  NYAG has not pled the existence of an enforceable independent contract, so *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394-97 (1987), has no bearing here.

**C.      NYAG's Minimum-Wage and Overtime Claims are Inextricably Intertwined With Multiple CBA Terms That Govern Compensable Hours.**

NYAG cannot escape that its claims are inextricably intertwined with the CBAs.  Each of its arguments urging the Court to disregard the CBAs fails.  *See* Opp. at 9-18, 19-21.

*First*, the statutes and regulations identified by NYAG as the principal authority on what constitutes "work," *see* Opp. at 9, also expressly incorporate CBAs and employment agreements outlining the specific activities that are considered "work."[10]  Opp. at 9; *cf. Integrity Staffing Solutions v. Busk*, 574 U.S. 27, 31 (2014) (observing that FLSA does not define "work").  In particular, the Portal-to-Portal Act incorporates CBA provisions to determine the preliminary and postliminary tasks an employer must compensate as "work."  *See* Opening Br. at 9 (quoting 29 U.S.C. § 254(b)(1)).  Under wait-time regulations, "[w]hether waiting time is time worked under the [FLSA] depends upon particular circumstances," including "*scrutiny and construction of the agreements between particular parties*."  29 C.F.R. § 785.14 (emphasis added).  Similarly, "awaiting the first principal activity of the workday is not" a compensable principal activity.  *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591 (2d Cir. 2007).[11]

These authorities make clear that in resolving NYAG's claims under the NYLL and the FLSA, this Court will need to interpret some ambiguous terms in the CBAs.  For example, the

_____

[10]  NYAG cites 29 C.F.R. §§ 785.19, 785.15, 785.18, and 778.223 as if they were binding.  *See* Opp. at 9.  They are not.  These provisions are "[a]dvisory interpretations" and "serve only to indicate the construction of the law which will guide" U.S. Department of Labor officials in their enforcement priorities.  29 C.F.R. § 775.1.  "Unlike regulations, interpretations are not binding and do not have the force of law."  *Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 83 (2d Cir. 1996) (quoting 29 C.F.R. § 775.1).  As such, purported violations of such guidance do not constitute a violation of "[f]ederal laws or regulations" required to state a claim of illegality under Executive Law § 63(12).  *State by Abrams v. Stevens*, 497 N.Y.S.2d 812, 813 (Sup. Ct. 1985).

[11]  The contention that the Portal-to-Portal Act "does not apply" here because NYAG "seeks compensation for time employees spend working off-the-clock during their shifts," Opp. at 9 n.5, ignores the FAC's clear focus on properly accounting for activities at the start and end of the workday that NYAG claims should be compensable, *see* FAC ¶¶ 7-8, 31-35, 37-38, 40-47.

8

Court will need to interpret the meaning of "in service of the employer" in deciding whether pre-shift wait time and training constitute compensable time. 2023 Master CBA Art. 17; FAC ¶ 33, 38, 39, 51. Similarly, this Court will need to determine the meaning of "effectively released from duty" in deciding whether post-shift travel to a UPS facility is compensable. 2023 Master CBA Art. 17; FAC ¶ 43, 45, 46; *see also* Opening Br. at 10-16 (collecting CBA provisions requiring interpretation). Likewise, the Court will also need to determine "what legal consequences were intended to flow from breaches" of the CBAs, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985), especially for allegedly unpaid meal time, for which the CBAs explicitly instruct employees to document their time and refrain from working. *See, e.g.*, 2023 Local 804 CBA, Art. 5.1(a), 2023 Upstate/West CBA, Art. 59. These questions render NYAG's causes of action substantially dependent upon ambiguous CBA terms requiring interpretation.

*Second*, NYAG's effort to distinguish *Diaz v. New York Paving Inc.,* 2025 WL 1220924 (S.D.N.Y. Apr. 24, 2025) fails. *Diaz* is directly on point. There, unpaid wage claims for preliminary and postliminary activities were preempted because the court was required to decide "whether the employee is entitled to be paid—at all—for pre and post shift presence/work," and the plaintiff's theory directly contradicted CBA terms on that question. 2025 WL 1220924, at *3. The FAC allegations here likewise raise claims that "directly contradict[] the express terms," of the CBAs concerning clocking in, clocking out, meal times, and timesheets. *Id.* at *2; *see* Opening Br. at 10-16. NYAG would hold UPS liable for failing to pay Seasonal Workers for certain hours, even if those hours were purportedly "worked" while the employee was clocked out for lunch (*e.g.*, 2023 Local 804 CBA, Art. 5.1 (stating "[t]here shall be no work" during such hours, which "will not be counted as time worked")), before the employee "registers in" (*e.g.*, 2023 Master CBA, Art. 17), or after the employee is "effectively released from duty" (*e.g.*, *id.*).

*Third*, NYAG's cited cases are easily distinguishable because each concerns allegations about underpayment of wages purely for an employee's *principal activities*, and did not involve any *preliminary* or *postliminary* activities under the Portal-to-Portal Act, which are the gravamen of the FAC.  *See* FAC ¶¶ 7-8, 31-35, 37-38, 40-47.  For instance, *Polanco v. Brookdale Hosp. Med. Ctr.* concerned plaintiffs who alleged that they worked "after the end of their shifts in order to complete all of their assigned tasks."  819 F. Supp. 2d 129, 131 (E.D.N.Y 2011).[12]  Likewise, in *Isaacs v. Central Parking Sys. of N.Y., Inc.*, the plaintiff alleged he was not paid for time completing paperwork after he clocked out.  2012 WL 957494, at *4 (E.D.N.Y. Feb. 27, 2012).  In *Varney v. United Parcel Serv., Inc.*, the plaintiff specifically alleged that he was not paid for time that he allegedly worked through lunch "due to volume and/or time requirements for deliveries."  2017 WL 11573252, at *1 (N.D.N.Y. Mar. 29, 2017).[13]  The allegations in these cases comfortably fit within the FLSA definition of work time—they are the employee's "principal activities" or "an intrinsic element" of those activities and compensable under 29 U.S.C. § 254(a), so reference to a CBA under § 254(b) was unnecessary.  *Integrity Staffing Solutions*, 574 U.S. at 34.  In contrast, many of NYAG's allegations rely on UPS's alleged failure to compensate Seasonal Workers for tasks that are not principal activities—*e.g.*, returning equipment (FAC ¶¶ 8, 43, 45) or training (FAC ¶¶ 50-51).  Any allegations of unpaid preliminary and postliminary activities requires reference to the CBAs under 29 U.S.C. § 254(b).

---

[12]  Moreover, the defendant in *Polanco* identified no specific CBA provision that governed or contradicted the plaintiffs' theory.  *See id.* at 134.  In contrast, here, the CBAs directly govern the timekeeping practices the FAC challenges as unlawful.

[13]  Similarly, *Arroyo v. NYU Langone Hosp.* is inapposite because it had no occasion to consider whether CBAs are relevant to defining "principal activities" under the FLSA; the plaintiff there brought no FLSA claims at all.  2019 WL 5682628, at *2 (S.D.N.Y. Oct. 31, 2019).

Nor do NYAG's cases support its attempt to cast statutory claims as "independent[] from" the CBAs, when many CBA-mandated practices are the basis for its complaint. Opp. at 13. NYAG alleges Seasonal Workers were required to "work" before UPS permitted them to clock in, *see* FAC ¶¶ 33-34, 38-40, and does not contest that CBA provisions contain an agreement between UPS and its workers about how and when workers do so, *see* Opening Br. at 10 (collecting CBA provisions). *Murray v. United Parcels Service, Inc.* involved a plaintiff who was "not required to 'punch in or punch out,'" and there was no issue over whether timeclock entries accurately captured all compensable work—the key issue in this case. 2022 WL 4468295, at *2, 10 (E.D.N.Y. Sept. 25, 2022). Moreover, the claims in *Murray* did not depend on the meaning of the CBAs, *id.* at *11, whereas here, UPS has identified specific CBA provisions that govern the challenged timekeeping practices, *see Arroyo v. NYU Langone Hosp.,* 2019 WL 5682628, at *4 (S.D.N.Y. Oct. 31, 2019) ("[T]he scope of a statutory entitlement does sometimes depend on the terms of an underlying employment contract.").[14] Separately, *Severin v. Project OHR, Inc.* and *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.* both involved parties who *agreed* that overnight shifts at the center of the parties' disputes were "work," and those courts needed to consult CBAs only to determine damages. *Severin*, 2011 WL 3902994, at *1, 3 (S.D.N.Y. Sept. 2, 2011); *Chu*, 194 F. Supp. 3d 221, 228 (S.D.N.Y. 2016). Unlike here, neither presented the question the *Severin* court recognized warrants preemption— whether the challenged practices are sanctioned by the CBA. *Severin*, 2011 WL 3902994, at *4; *Chu*, 194 F Supp. 3d at 228.

---

[14]   Ultimately, preemption did not apply in *Arroyo*, but that case arose on a motion to remand and—because the plaintiff brought only NYLL claims—resolved doubts against removability that do not apply here. *Id.* at *4.

*Fourth*, NYAG's argument that it is not required to plead constructive knowledge misses the point. Constructive knowledge is essential to its claims and substantially depends on analysis of the CBAs. *See* Opening Br. at 15. Whether Seasonal Workers accurately reported time worked, or used timesheet inspection protocols, bears on UPS's knowledge of allegedly unpaid work time, because "establishing a reasonable process for an employee to report work time is one way to exercise reasonable diligence" over whether an employee has worked unauthorized hours, "so an employer with such a system will not ordinarily be chargeable with constructive knowledge of unreported work." *Perry v. City of New York*, 78 F.4th 502, 513 (2d Cir. 2023).

*Fifth*, NYAG minimizes the impact of compensable time on the calculation of statutory overtime, which is likewise inextricably intertwined with multiple CBA provisions. *See* Opening Br. at 16-19. Both damages and liability for the purported overtime violations depend on whether UPS has properly determined "all hours worked," Opp. at 15, an inquiry that—as explained above—requires consideration of Seasonal Workers' principal activities and interpretation of the CBAs. Even NYAG's brief emphasizes that the focus of its overtime claims is the calculation of hours allegedly worked. Opp. at 14.

## D.    NYAG Seeks To Force UPS to Change CBA-Required Practices.

NYAG disclaims the challenges it makes to the lawfulness of CBA-required practices. *See* Opp. at 18-19. This Court should not indulge NYAG's selective reading of its own complaint. The FAC targets practices specifically sanctioned under the CBAs. *See supra* Part I. No "direct" challenge to a CBA is required to conclude that a claim is preempted for challenging CBA illegality. For instance, in *Diaz*, the plaintiff made no direct claim that the CBA was illegal. Instead, the plaintiff pled exactly what NYAG included in its FAC—that one of the defendant's specific timekeeping practices, which involved CBA provisions, violated the FLSA and NYLL. 2025 WL 1220924, at *3; *see also Medrano v. Excel Corp.*, 985 F.2d 230, 234 (5th

12

Cir. 1993) (preemption required where plaintiff "was *essentially* challenging the very legality" of CBA terms (emphasis added)).  No magic words are required; seeking injunctive relief that challenges the legality of CBA terms requires preemption.[15]

*Vera* confirms that the Court should dismiss the FAC because it seeks to enjoin timekeeping practices specifically proscribed by the CBAs.  *Vera* did not, as NYAG claims, involve a "direct" challenge to the lawfulness of a CBA provision.  Rather, *Vera* noted that the "[p]laintiff alleged that defendant's practices consistent with the [CBA-defined] policy constituted impermissible wage deductions," and sought "an injunction."  335 F.3d at 113.  NYAG's request for prospective injunctive relief, as in *Vera*, constitutes an impermissible challenge to the CBAs' legality, and preemption is required under *Vera*, *Medrano*, and *Diaz*.[16]

### E.   NYAG Misunderstands and Misstates the Consequence of § 301 Preemption.

NYAG's argument that it is not subject to the CBA grievance and arbitration procedures because it is not a party to the CBAs misses the mark.  Opp. at 22.  UPS does not seek to compel arbitration of NYAG's claims but rather seeks dismissal.  Once the claims are preempted under the LMRA, they must be treated as §301 claims and if they fail to meet the elements of such a claim, they must be dismissed.[17]  *See* Opening Br. at 24.

---

[15]   UPS does not argue that the Court should simply strike NYAG's request for an injunction at the pleading stage, as the defendant requested in *S.E.C. v. Musk*, 2026 WL 279790, at *20 (D.D.C. Feb. 3, 2026).  *See* Opp. at 19.

[16] The NLRA prohibits parties to collective bargaining agreements from unilaterally changing the terms of those agreements without bargaining through those workers' union.  *See* 29 U.S.C. §158(a)(5).  NYAG's request for injunctive relief effectively asks this Court to ban UPS from adhering to certain provisions in the CBAs and force the Company to alter those terms without bargaining with the union.

[17]   NYAG argues that it never agreed to arbitrate its claims and cannot compelled to arbitration. *See* Opp. at 22 (citing *People ex rel. Cuomo v. Coventry First LLC*, 13 N.Y.3d 108 (2009) and *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002)).  That argument has no bearing here, where

A preempted claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220 (citation omitted). To treat a preempted claim "as a § 301 claim" brought on behalf of Seasonal Workers, the Court must consider whether the FAC pleads the elements of a § 301 claim. *Id.* It clearly does not. A claim for a violation of a CBA with an arbitration provision requires a plaintiff to exhaust grievance procedures *or* be excused from those procedures. Opening Br. at 24-25. NYAG fails to allege either, and thus, the preempted claims must be dismissed.[18]

### III.   THE FAC CONTAINS ALLEGATIONS SUFFICIENT TO DISMISS OVERTIME CLAIMS AS TO DRIVER HELPERS UNDER THE MOTOR CARRIER ACT

NYAG's contention that UPS has raised its Motor Carrier Act ("MCA") argument prematurely is without merit. *First*, it is not plausible that UPS trucks weigh less than 10,000 pounds. *Cf.* Opp. at 24. Driver Helpers ride in UPS trucks distinctive for their size, and the FAC pleads that Driver Helpers are employed only during the busiest season of the year, when trucks are laden with more packages than normal. *See* FAC ¶¶ 3-4, 18. The Court need not abandon common sense when reviewing the pleadings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]hether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

---

UPS does not seek to compel arbitration but rather seeks "dismiss[al]" of preempted claims under clear Supreme Court precedent. *Allis-Chalmers*, 471 U.S. at 202.

[18]   Moreover, it is irrelevant that NYAG is not a party to the CBA. The § 301 inquiry is "whether the claim is inextricably intertwined with the terms of a CBA, *not* the individual status of the [litigant] as a party to the CBA." *Finkel v. Structure Tone, LLC*, 782 F. Supp. 3d 130, 144 (S.D.N.Y. 2025) (Broderick, J.) (emphasis added and alterations accepted). It is also irrelevant that NYAG could not arbitrate its claims. "The fact that the state cause of action may provide the only remedy available to the aggrieved party should not affect the preemption analysis." *Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157, 160-61 (2d Cir. 2001).

14

*Second*, NYAG's argument that UPS failed to establish that Driver Helpers transported goods in interstate or foreign commerce is refuted by the FAC.  *See* Opp. at 25.  The FAC describes the international nature of UPS's business.  *See* FAC ¶ 4.  Goods transported within a single state move in interstate commerce when they are "involved in a 'practical continuity of movement' in the flow of interstate commerce."  *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2d Cir. 2002).[19]

*Third*, contrary to NYAG's contention, UPS's argument does not rely merely on "the title of 'Driver Helper.'"  Opp. at 23.  Rather, the FAC alleges that Driver Helpers have responsibilities sufficient to apply the MCA.  It pleads that Driver Helpers have safety-affecting responsibilities in that "workers assist directly with package delivery" and "accompany Drivers of UPS trucks to help the Drivers deliver packages."  FAC ¶ 4; *see also id.* ¶¶ 19, 26.  The MCA applies to "helpers assigned to assist with deliveries ride in the truck cab next to the drivers on … delivery trucks so they are able to assist the driver along the designated route and at customer locations with parking, loading and unloading the delivery truck."  *Swanson v. Manhattan Beer Distributors, LLC*, 2018 WL 4008012, at *5 (E.D.N.Y. July 10, 2018), *vacated in part on other grounds,* 2023 WL 8366534 (E.D.N.Y. Nov. 22, 2023).[20]  Accordingly, the Court should dismiss the FLSA overtime claim as to Driver Helpers under the MCA.

## CONCLUSION

For the reasons set forth above, UPS respectfully requests the Court to dismiss the FAC in its entirety with prejudice.

---

[19]  *Cf. also Flowers Foods, Inc. v. Brock*, 146 S. Ct. 1358, 1363 (2026) (employees qualify for the Federal Arbitration Act's "interstate commerce" exemption even if they do not "cross state lines or interact with a vehicle that does").

[20]  *Khan v. IBI Armored Servs.*, 474 F. Supp. 2d 448, 458 (E.D.N.Y. 2007) and 29 C.F.R. § 782.4 are inapposite because they govern only helpers who have no role whatsoever in handling cargo.

DATED: June 29, 2026

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**


By:  */s/ Manisha M. Sheth*
     Manisha M. Sheth
     Adam M. Abensohn
     Wing F. (Alex) Ng
     David E. Chardack

295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
manishasheth@quinnemanuel.com
adamabensohn@quinnemanuel.com
alexng@quinnemanuel.com
davidchardack@quinnemanuel.com

*Attorneys for Defendant United Parcel Service,
   Inc.*

**<u>REQUEST FOR HEARING</u>**

The undersigned respectfully requests an opportunity to be heard on this motion.  The undersigned respectfully submits that a hearing would be helpful to the Court and require approximately three hours of the Court's time.

DATED: June 29, 2026

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP


By:    */s/ Manisha M. Sheth*
    Manisha M. Sheth
    Adam M. Abensohn
    Wing F. (Alex) Ng
    David E. Chardack

295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
manishasheth@quinnemanuel.com
adamabensohn@quinnemanuel.com
alexng@quinnemanuel.com
davidchardack@quinnemanuel.com

*Attorneys for Defendant United Parcel Service,*
   *Inc.*

17

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Manisha M. Sheth, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 15 pages, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c), in compliance with the Court's order concerning the length this brief.  *See* Dkt. 33.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 29th day of June, 2026, in New York, New York.

*/s/ Manisha M. Sheth*
Manisha M. Sheth

*Attorney for Defendant*
*United Parcel Service, Inc.*
